The next case is Shawakih v. Keisler Good morning, your honors. May it please the court. My name is Robert Burke, B-E-R-K-E. I would like to advise the panel that I would like to reserve two minutes for rebuttal. Please watch the clock. I'm sorry, your honor? Please watch the clock. I will. Thank you. What I think is most interesting about this case is less so from a factual issue than from a legal perspective, and I think that this case has much to do with burdens, burden shifting and standards of review. I may be misreading what the panel found interesting about this case, but that's what I find interesting about this case. The panel may notice that it was noted in the petitioner's brief that was submitted to this court that there's actually a dual layer of analysis that an immigration court and subsequently the board would have to go through before making a determination that an alien has participated in persecution such that it would act as a bar to either asylum or statutory withholding. And the dual level of analysis is, number one, the government first bears the burden of showing the inference that an alien has been involved in persecution. And then it would appear, from what I've seen in the past, the burden would shift to the alien to show that he fits in one of these recognized exceptions. The one that I'm dealing with here would be the fact that he might have been involved in a general civil strife, but other exceptions certainly to rebut that inference could be shown by applying the continuum test to say, my activities were far removed from the actual, were so far removed from the actual persecution that I fall on the outside of the continuum and therefore you can't say that I participated in this persecution. Now, in my opinion, and it's interesting because the respondent actually raised this in his brief, it's on page 32, but you don't have to turn there. I'm going to summarize it here. On page 32, where the government talks about the standard of review for this court, and I'm not mixing up issues here. I'm going to come back. But they talk about the standard of review for this court and they cite to that portion of the case which says, this court is reviewing for substantial evidence whether it's been proved that the alien is a persecutor. Now, obviously it's not the alien's burden to prove that he's a persecutor. The initial burden rests with the government to show that inference and now the government is saying- What case do you rely on that says the burden is shifted, the burden of proof is shifted to the government? It's, that arises in two places. One, I think it's a legitimate, legitimately in the regulations as read H.C.F.R. sections 208.13.C.2.2. You're moving a little too quick. It's C.F.R. what? 208.13.C.2. and then Roman numeral 2. And 208.16.D.2. And I also indicate the citation to Miranda Alvarado, 449.F.3. at page 930. I think Miranda Alvarado to some extent suggests that the burden might be for the government as to constituting purposeful material assistance for the prosecution. That's only by the preponderance of the evidence. And then the other, whether the persecutory acts were done on a counter protected ground. But again, that is your burden by the preponderance of the evidence. The worry that I have, as long as we're talking about standards of review, it seems that this case very much meets the Chevron standard of review of the Chevron cases such that the IJs work. They did it on their own. And therefore, it seems to me based on our cases, again the same case that you cite for government burden or non, suggests that this is a Chevron standard of review. And it seems to me that here the BIA set the standard and looked at what the law ought to be as it relates to purposeful material assistance for the prosecution and found that what your client did met the standard. So if I take the Chevron standard of review, how do I overturn the BIA? I respectfully disagree with the court. What case would you rely on for that? Chevron itself, Your Honor. There are exceptions to where this court would defer to the interpretation of the agency. One exception to where the court would not be obligated to defer to the agency, of course, is where the agency's holding or ruling is clearly contrary to the established law, to the precedent, and to the regulation. And I think that we do have a situation there. And I think that the board created it by not going through the analysis that's set forth by the statute. The board can't ignore its own precedent and have this court expect just to defer to a change in attitude or a change in interpretation without looking as to what is done before it. Nor can the board just say we now interpret white to mean black and black to mean white. It has to be consistent with the regulatory authority before it. My opinion. Okay. Aside from the standard of review, both the IJ and the board found that the Palestinian Authority security services for which your client worked was engaged in persecution of alleged collaborators with the Israeli government. I assume we have to accept that. Regardless of the burden of proof, it seems to me that it's very hard to say that all of a sudden they don't do this. And the real question, as I understand it, is that of your client, whether or not he was involved in the process of invasion of political rights of these individuals. Is that about where we are? Your Honor, yes. But I also think there's a matzah ball in the evidence. Forgive my use of the metaphor. And that is obviously, you know, when we represent the alien again in an asylum claim and saying that person persecuted me, then we would have to say, then the government would jump up and say, hey, there's a difference between legitimate prosecution, legitimate investigatory acts of a government, and what we call persecution. Now, there's places in this record where it suggests that he's investigating activities that are illegal under the law of this authority. He's suggesting that maybe these activities aren't illegal under the law of this authority. There's even a suggestion that the death penalty has been carried out for treason, which could be illegal under anybody's law. The state of the law that he's dealing with is not good. What we have is an investigator who's investigating these activities that maybe are crimes, maybe aren't crimes, for a government that, yes, has a habit of persecution, that, yes, has a track record of persecution. But that doesn't necessarily, and I'm not necessarily saying, look, let the authority offer the hook. I'm not saying that. But what I am saying is, if we have an entity that we like versus an entity that we don't like, and we have a functionary who's doing a job that would be a normal process of an investigatory and prosecutory function, then at what point does that person become a persecutor based upon this government's perception of its employer? And I'm not just saying it's a matter of perception. It's a matter of well-documented perception. But are we then saying that this government, which has this habit, can no longer engage in normal prosecutory and investigatory functions? Well, if I understand the record correctly, to our court, your client didn't raise the issue of whether or not the security services were looking for traitors. That was raised in the board, but was not raised to us. So I don't think the issue is before us of whether they were carrying out a normal function of protecting the country against invaders and traitors. It seems to me that the record, based upon what's put to us in a petition from your client, is that whether or not this organization, which has been found to take away these political rights, whether his involvement was such that he would be tarred with that brush. I wholeheartedly agree. Okay. Then maybe you could explain. The case of Miranda kind of hurts you because all we had there was an interpreter. Here we have an individual who was investigating, and as a matter of fact, there's some evidence in the record that he knew these people would be arrested based upon what he did. Why doesn't Miranda, with the interpreter, was involved and that was sufficient? Why doesn't that explain the case why your client was too close to it and was involved in the actual proceedings? Now we step onto that continuum, and I will note for the Court that my time is completely up, all 10 minutes, but I would like to answer the question with the Court's permission. We step onto that continuum when Your Honor asked that question, and now we have to draw the line between, in one case, a prison guard who merely escorts people to where they're going to be interrogated or specially interrogated. I believe that's the case. That was in your additional citations. A prison guard who's armed with a gun and shoots prisoners trying to escape. Now obviously this prison guard over here understands that he's bringing people to be tortured, whereas this prison guard over here is inherently involved in the torture. Here we have an intervening step. We have an individual who takes information, passes it on, and it's somebody else's decision ultimately as to whether that individual gets arrested, gets further investigated, doesn't get further investigated. The petitioner herein doesn't have any specific knowledge of anybody that he investigated or doesn't have any direct knowledge of any person that he investigated actually getting tortured, killed, detained, etc., etc., etc. He's in a position of passing it on. Now that's a little bit different, of course, from the prison guard that we're talking about in the... I so apologize that the name of that case is slipping me, but it was the one from the additional citations. The prison guard who escorts the prisoners to be tortured, who may be conscripted into that service, may not have options about whether he's able to do it, not able to do it, etc., etc., etc., but essentially the court perceived that as being he opens the door and walks somebody down the hall. And somewhere in the middle of this we have an interpreter who is providing the answers to questions that are being asked during the course of a torturous interrogation in my read of those particular facts. And here we have an individual who's doing arm's length, well, sometimes a little invasive, he said he would float out a faucet, but we have an individual who's doing arm's length who's so protracted down the line, maybe he's an instigating force, but he's clearing people, he's reporting people, but that's gone up a long line before this results in any kind of a persecution. Thank you for the extra time. I apologize for taking liberally of it. Good morning, Your Honor. May it please the Court. My name is Ted Hurd, appearing from the Civil Division of the Department of Justice for the Respondent Attorney General. Your Honor, the case this morning presents the Court with a situation in which there are actually two alternative rulings reached by both the immigration judge and the Board that independently would sustain the result below. First, that Mr. Shawaka assisted in the persecution of the Palestinian civilians, and then the alternative that he did not show a well-founded fear of future persecution. Either of those holdings could be sustained by this Court. I want to turn principally, because counsel for petitioner has addressed that, the issues of Mr. Shawaka's role as an assistant in persecution. I think from Judge Wallace's questions, it's clear that petitioner does not have an argument that the employer, the direct employer of Mr. Shawaka, engaged in a pattern of persecution. The record is replete with evidence, both from the State Department and non-governmental organizations, that the intelligence services, the security services, including Mr. Shawaka's own GIS, engaged in mistreatment, torture, detention, vigilante killings, a number of persecutory acts. Excuse me. The Second Circuit case, I think, Castaneda, which indicates that the person needs to have cianter, there's some level of cianter to show that he's a persecutor, he assisted in persecution. What was interesting to me about the record was that Mr. Shawaka denies that he knew anything about what happened to the people who were arrested, that he denied that the authorities harassed them, he denied that he knew anything about it. What level of cianter, if any, do you think is necessary in order to find the petitioner responsible for persecution or barred by this persecution bar? Your Honor, I think under the facts of this particular case, I think that the Board's finding of willful ignorance is a very good touchstone, because the testimony that Mr. Shawaka gave under cross-examination from DHS counsel was very clear that he was trying to deny, as if he had blinders on, the logical consequences of his conduct. In other words, he said, it's not my job to know, I don't know, I don't follow up, I'm not told. That, I think, Your Honor, is sufficient cianter. It's quite different from the First Circuit case of Caspineta, where someone is instructed to block access as a military operation. Both the immigration judge and the Board, basically, I think, found correctly enough that Mr. Shawaka knew the consequences of his action. Under cross-examination, he could not deny that arrests would follow. Indeed, he was proud of the fact that he was cracking down collaborators. There's no... Nothing happened to those people who were arrested. Just procedurally, for a moment, if I may, the BIA discards or rejects the IJ's credibility determination. And so that's not an issue. But the BIA, as I understand it under the new regulations, is precluded from fact-finding itself. And so the question arises whether this finding of willful blindness is a new fact that was found by the BIA or a legal question, or do you find a willful blindness determination made by the IJ? Well, I think that the immigration judge's decision is quite consistent with the willful ignorance finding of the Board. I think the immigration judge says, in effect, he claims not to know, but I don't believe that. I don't think, in response to Your Honor's other question, I can't speak to the new rules, but I don't think that what the Board was doing was somehow substituting one credibility determination for another. In its decision, in the preface to its decision, it basically says, we're not going to reach the immigration judge's concerns about Mr. Siowak's credibility in certain respect. Well, as to certain respects, because the immigration judge thought that portions of Mr. Siowak's testimony weren't credible, but those went, quite frankly, to details, including the asylum interview, and didn't go to the bottom line of Mr. Siowak, in a sense, denying knowledge of the persecution by his agency. So I think, coming back to Your Honor's question, I don't think that's a problem for this Court, that the immigration judge and the Board somehow are at odds or inconsistent with each other. I think they're fully consistent, both as to the facts and to the law. One point Your Honor seemed to be suggesting was the notion of, well, we don't know what happened to these people. I would submit that the problem we have in any type of case like this is where you have someone whose role is to track down collaborators, so they're to be arrested, knowing that his agency and the Palestinian Authority treats collaborators, in counsel's word, as traitors, they're going to get what is due to them. And Mr. Siowak was unapologetic about that. So I don't think we need to leave, I don't think, in Your Honor's terminology, we need to link this arrest to this persecution. Mr. Siowak was serving up these people for what they were doing. Well, what troubles me is that Mr. Siowak denies, I couldn't find anything in the record where he acknowledged that the Palestinian Authority was giving these people their due that was persecuting them. He said, oh, no, that would not happen. Well, the most I would say, and I think it's at 264 of the record, is Mr. Siowak was saying that these people, in essence, deserved what they got from the Authority. Now, he did deny in cross-examination the Amnesty International reports about torture. Well, if I were in his shoes, I would certainly want to deny that as well, because had he admitted that, that would have been the end of the story for him. And the immigration judge thought he was incredulous on that point. So I don't think we would find someone like Mr. Siowak who is not a naive person, let's say, if I can use that word, to say, oh, yes, I'm going to admit to all of this. That would have basically finished his case right there. I wanted to address Judge Smith's question about burdens, if I have a minute, Your Honor. I think that, if you look at the essence of it. Let me ask a question before we get into that, if you would, please. If I understand correctly, the Petitioner has not raised in this appeal the issue of ignorance. I think that's right. He has not challenged the enter in the way that that was at issue in other cases. He, I think, knew the consequences of what was going on. It wasn't as if he had other duties, for example, that would be legitimate, if I can use that term. He was not a civil law enforcement person. I take it, therefore, what you're saying is that under our usual approach to cases, if it's not raised by the Petitioner, as it apparently wasn't here on the issue of ignorance, that we wouldn't get into that issue. That's correct, Your Honor. I think that would be going back into the fact finding that was done. I defer to your answer to Judge Smith's question. Well, I didn't want to interrupt your colloquy. But Judge Smith, I think, has asked several questions, one of which maybe goes to the issue of burden of proof. I don't think under the Board's precedence it's clear as to the ultimate burden. Certainly in Miranda-Alvarado, this Court was quite clear that the immigration judge used the substantial evidence standard, and that would be the standard of review, I think, based on what weighted evidence is sufficient to show assistance. The Board's precedence, however, I don't think illuminate for us the two points that you made. However, I would say that the regulation that counsel quoted, 1208C, 1208.13C, says something to the effect that, let me see if I can find it, indicates that if there is evidence of persecution, in other words, I think at most the government has to say, here's some evidence, and then the burden definitely shifts. It's sort of like a tipping, and it shifts to the petitioner to say, I was not involved either. I did not know, or I was not involved. I think that's how we would read 1208.13C. And I think that would answer that question. And I think that we don't have an issue of scienter here. I think that it's very clear that we have a consciousness which the Board found was sufficient. Well, under the second citation that counsel cited, it says, the burden of proof in cases in which an advocate has demonstrated past persecution, under paragraph B1 of this section, the service shall bear the burden of establishing preponderance of the evidence requirement of the paragraph. But that's in the area of past persecution issues. That's correct, Your Honor. I think that we're, I'm looking at 1208.13C, sub 2. And it says, if the evidence indicates that one of the above grounds, the persecutor bar, applies to the applicant, he or she shall have the burden of proving by a preponderance of the evidence that he or she did not so act. So I think that really answers the Court's question that, and to come back to the record, I think from reading the record, it's clear that Mr. Chiwaka was on notice that this issue was going to be one of the paramount issues before him for his asylum hearing. So there's no argument here that this was a surprise to him or there was a lack of notice or some sort of prejudice. So I think that clearly the Board acted, and the immigration judge before them, acted quite clearly and responsibly in finding that Mr. Chiwaka fit very comfortably within the continuum of assisting persecution. Certainly if Miranda Alvaredo, who is a translator, and that's his sole function in the Act, if he fits, then certainly someone who, in my terms, serves up the collaborators so that they can be arrested and detained and punished and persecuted, then I think he fits comfortably within that continuum. For us to say no and depart from that and say no, we're not going to impose the persecutor bar on those security forces who are in charge of going after the civilians, I think would really undermine the whole purpose of the statute. It would let a whole cadre of people free. Clearly under Miranda Alvaredo, one does not have to engage in the personal infliction of the punishment. I think those who assist and enable that are just as culpable. Indeed, if you're going to deter the civilians, if you're going to deter people from collaborating or cooperating or taking a view inconsistent with the authority's view of how the populace should behave, you have to have people out on the street who are going to identify those collaborators, just like Mr. Higginwit from the Fourth Circuit. You have to pick them out and arrest them. I just wanted to close by leaving the other issue for our brief. I think that it's clear if the Court were to reach the other grounds, that Mr. Chiwaka did not show well-founded fear of persecution. He consistently identified the informants as the ones who were going after him, and it shows his conduct did have an effect. There were people who issued threatening phone calls to him, which showed that he actually had a real impact in terms of his mission.
judges: Wallace, Ikuta, Smith